PER CURIAM.
Kenneth Eugene Billups was convicted of capital murder for the killing of Stevon Lockett. The murder was made capital because it was committed during the course of a first-degree robbery. See § 13A-5-40(a)(2), Ala.Code 1975. After a sentencing hearing, the jury, by a vote of 7-5, recommended that Billups be sentenced to imprisonment for life without the possibility of parole. The trial court overrode the jury’s recommendation and sentenced Billups to death. Billups filed a *1081 motion for a new trial, which the trial court denied. An appeal to the Court of Criminal Appeals followed.
The Court of Criminal Appeals, over a vigorous dissent by Judge Welch, affirmed Billups’s conviction and sentence. Billups v. State, 86 So.3d 1032 (Ala.Crim.App.2009). We granted certiorari review to consider, among other issues, whether the trial court erred by admitting evidence as to Billups’s involvement in the killing of four men at the Avanti East Apartments in Birmingham three days after Lockett’s murder (“the Avanti East killings”) and, if that evidence was properly admitted, whether the trial court’s instruction to the jury regarding the purposes for which the jury could consider that evidence was sufficiently limiting. We conclude that the trial court improperly instructed the jury regarding the purposes for which it could consider the evidence of Billups’s involvement in the Avanti East killings. Accordingly, we reverse and remand. Because we conclude that the trial court’s limiting instruction was insufficient, we pretermit any discussion of the other issues as to which certiorari review was granted.

Facts and Procedural History

In the early morning hours of December 13, 2003, Lockett was shot and killed in Birmingham. On December 16, 2003, four men, namely, Manuel Nunez, Rafael Salce-do, Enrique Marquez, and Wilbur Gomez, were shot and killed at the Avanti East Apartments in Birmingham. In October 2004, Billups was indicted on 13 counts of capital murder in connection with the Avanti East killings. In June 2005, Bill-ups was indicted for the murder of Lock-ett. In November 2005, Billups was convicted of 13 counts of capital murder in connection with the Avanti East killings; the trial court followed the jury’s recommendation in that case and sentenced Bill-ups to death.
In December 2005, before the trial in this case, the State gave the defense notice of its intent to present evidence regarding Billups’s involvement in the Avanti East killings during Billups’s trial for the capital murder of Lockett. During a pretrial hearing, the trial court, over Billups’s objection, concluded that the evidence regarding Billups’s involvement in the Avanti East killings was admissible “based upon the close proximity, the fact that the same weapon was used, and the fact that [the offenses] are very similar.”
At trial, the State presented considerable evidence regarding Billups’s involvement in the Avanti East killings. The State notes that fact in its brief to this Court, stating that “[t]he evidence presented by the State included eyewitness testimony of the [Avanti East killings] by two witnesses, testimony of forensic experts, a firearms expert, a detective, as well as photographic evidence demonstrating the wounds of the victims [in the Avanti East killings].” State’s brief, p. 16 n. 12 (citations to the record omitted). The State’s first mention of evidence regarding Bill-ups’s involvement in the Avanti East killings began with its opening statement, during which the State provided the jury with a detailed account of those killings and displayed postmortem photographs of the four victims of the Avanti East killings. During its case-in-chief, the State called no fewer than seven witnesses who testified regarding the Avanti East killings. The State began its cross-examination of Bill-ups with several questions regarding his involvement in the Avanti East killings; the State also introduced in that cross-examination postmortem photographs of the victims of the Avanti East killings it had displayed during the opening statement. Further, during its closing argu *1082 ment, the State made numerous references to the Avanti East killings.
Billups objected on several occasions to the introduction of the aforementioned evidence, arguing, among other things, that the evidence was inadmissible because, Billups said, it was both unnecessary and “extremely prejudicial.”
One of the witnesses for the State was Charles Cooper, an eyewitness to the Avanti East killings. During his testimony, the trial court instructed the jury as follows regarding its consideration of the evidence of Billups’s involvement in the Avanti East killings:
“Ladies and gentlemen, let me tell you one thing about this testimony. You’re hearing testimony today about another incident that allegedly occurred, not the same one that Mr. Billups is actually charged with in this case.
“The law is clear that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action and conformity therewith. In other words, evidence of other crimes allegedly committed by the defendant cannot be used to show bad character.
“The evidence being presented regarding other acts allegedly committed by the defendant can be considered by you only for the purpose of determining either motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
“I’m going to repeat those for you. But if you think the evidence from the other case is relevant to the issues of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in Stevon Lockett’s death, then you can consider this evidence.
“But it cannot be used by you for any other purpose; all right?”
Additionally, the trial court stated the following in its final instructions to the jury:
“Now, as I instructed you during the trial, there’s been some testimony regarding an allegation of other crimes. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action and conformity therewith. In other words, evidence of the other crimes allegedly committed by the defendant cannot be used to show bad character. It cannot be used to show bad character. The evidence being presented regarding other acts allegedly committed by the defendant can be considered by you only for the purpose of determining motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, as I have instructed you. If you think the evidence from the other case is relevant to the issues of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in Stevon Lockett’s death, then you can consider it. But it cannot be used by you for any other purpose.”
Billups did not object to the trial court’s instructions regarding the evidence of his involvement in the Avanti East killings, and, for all that appears in the record, Billups did not accept the trial court’s offer “to formulate some type of limiting instruction” regarding that evidence.
On appeal, the Court of Criminal Appeals concluded that the trial court did not err by admitting the evidence regarding Billups’s involvement in the Avanti East killings, stating, in relevant part, that “the evidence about the [Avanti East] killings ... was relevant to establish Billups’s identity, intent, pattern or plan.... ” Billups, 86 So.3d at 1053. As to Billups’s *1083 contention that the trial court’s jury instruction concerning that evidence was insufficient, the Court of Criminal Appeals disagreed, noting that “the trial court repeatedly instructed the jury as to the limited purpose for which evidence about the [Avanti East] killings ... was being admitted” and that the trial court “specifically instructed the jury that it could not use the collateral bad act evidence to show Billups’s bad character or to show that he acted in conformity therewith.” Billups, 86 So.3d at 1058.
As noted, Judge Welch authored a vigorous dissent, concluding, in sum, that “[t]he trial court committed reversible error when it admitted the collateral-act evidence.” Billups, 86 So.3d at 1072 (Welch, J., dissenting). Additionally, Judge Welch concluded that the trial court did not properly instruct the jury as to the purposes for which it could consider the evidence of Billups’s involvement in the Avanti East killings, stating:
“[A]lthough the majority has correctly stated that the trial court did issue ‘limiting’ instructions, those instructions were wrong as a matter of law. The trial court accepted the State’s invitation at trial to instruct the jury that it could use the collateral-act evidence for any of the reasons listed in Rule 404(b), [Ala. R. Evid.,] even though the State never argued that the evidence was admissible for most of those purposes. The State never argued that evidence about the [Avanti East killings] fell within the exceptions in the exclusionary rule for evidence related to opportunity, preparation, knowledge, or absence of mistake or accident. Thus, the trial court, by issuing its erroneous instructions, greatly enhanced the prejudice caused when evidence about the [Avanti East killings] was admitted because the erroneous instructions permitted the jury to consider the illegal evidence for many issues other than those for which it was purportedly admitted.”
Billups, 86 So.3d at 1078 (Welch, J., dissenting) (citation to record omitted). In conclusion, Judge Welch stated:
“Although defense counsel did not object to the instructions, based on the record as a whole, I believe that the error [in the trial court’s limiting jury instructions] affected Billups’s substantial rights and that it seriously affected the fairness and integrity of the proceeding against him. Therefore, this constitutes plain error.”
Billups, 86 So.3d at 1079 (Welch, J., dissenting).

Discussion

Because Billups did not object to the trial court’s jury instructions regarding the evidence of his involvement in the Avanti East killings, we review this issue for plain error. See Calhoun v. State, 932 So.2d 923, 973 (Ala.Crim.App.2005) (citing Rule 45A, Ala. RApp. P.)
“ ‘Plain error is defined as error that has “adversely affected the substantial right of the appellant.” The standard of review in reviewing a claim under the plain-error doctrine is stricter than the standard used in reviewing an issue that was properly raised in the trial court or on appeal. As the United States Supreme Court stated in United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the plain-error doctrine applies only if the error is “particularly egregious” and if it “seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.” See Ex parte Price, 725 So.2d 1063 (Ala.1998), cert. denied, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999).’ ”
*1084 Ex parte Brown, 11 So.3d 933, 935-36 (Ala.2008) (quoting Hall v. State, 820 So.2d 113, 121-22 (Ala.Crim.App.1999)).
In Moore v. State, 49 So.3d 228 (Ala.Crim.App.2009), the Court of Criminal Appeals stated the following regarding Rule 404(b), Ala. R. Evid., which addresses the admissibility of evidence of collateral bad acts:
“Rule 404(b), provides:
“ ‘Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....’
“The Alabama Supreme Court has ‘held that the exclusionary rule prevents the State from using evidence of a defendant’s prior bad acts to prove the defendant’s bad character and, thereby, protects the defendant’s right to a fair trial.’ Ex parte Drinkard, 777 So.2d 295, 302 (Ala.2000) (citing Ex parte Cofer, 440 So.2d 1121, 1123 (Ala.1983)). This court has explained that ‘[o]n the trial for the alleged commission of a particular crime, evidence of the accused’s having committed another act or crime is not admissible if the only probative function of such evidence is to prove bad character and the accused’s conformity therewith.’ Lewis v. State, 889 So.2d 623, 661 (Ala.Crim.App.2003) (quoting C. Gamble, McElroy’s Alabama Evidence § 69.01(1) (5th ed.1996)).
“ ‘ “ ‘This exclusionary rule is simply an application of the character rule which forbids the State to prove the accused’s bad character by particular deeds. The basis for the rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of the jurors’ ” ’
“Ex parte Jackson, 33 So.3d 1279, 1284-85 (Ala.2009) (quoting Ex parte Arthur, 472 So.2d 665, 668 (Ala.1985), quoting in turn C. Gamble, McElroy’s supra, § 69.01(1)).”
49 So.3d at 232 (emphasis added). We further note that “ ‘Rule 404(b) is a principle of limited admissibility. This means that the offered evidence is inadmissible for one broad, impermissible purpose, but is admissible for one or more other limited purposes....’” Taylor v. State, 808 So.2d 1148, 1165 (Ala.Crim.App.2000) (quoting C. Gamble, McElroy’s Alabama Evidence § 69.01(1) (5th ed.1996) (emphasis added)).
Billups contends that the trial court committed reversible error in instructing the jury as to the purposes for which it could consider the evidence of Billups’s involvement in the Avanti East killings because, he says, the trial court “failed to identify the specific purposes for which the jury could lawfully consider the evidence.” Billups’s brief, p. 22.[1] Specifically, Billups *1085 contends that the trial court erroneously allowed the jury to consider that evidence “for every [Rule] 404(b) purpose,” Billups’s brief, p. 23 (emphasis in original), and, thus, Billups says, “[the] jury was told that it could consider evidence of the Avanti East [killings] for numerous purposes that were indisputably not at issue (opportunity, preparation, knowledge, or absence of mistake).” Billups’s brief, p. 26. Conversely, the State contends that the trial court properly instructed the jury regarding the purposes for which it could consider evidence[2] of Billups’s involvement in the Avanti East killings because, the State says, “the evidence admitted at trial linking Billups to the [Avanti East killings] was properly offered to prove identity, plan, and motive of the killer, not as bad character evidence.” State’s brief, p. 26.[3]
In Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the United States Supreme Court stated that, when evidence of a defendant’s other crimes, wrongs, or acts is introduced under Rule 404(b), Fed.R.Evid., “the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.” 485 U.S. at 691-92, 108 S.Ct. 1496 (citing United States v. Ingraham, 832 F.2d 229, 235 (1st Cir.1987) (emphasis added)).[4] The State appears to contend that the trial court satisfies it duty to instruct the jury as to the “proper purpose” for which evidence regarding a defendant’s other crimes, wrongs, or acts has been introduced by simply reciting all the Rule 404(b) exceptions for which the evidence may be admitted and informing the jury that it may not consider that evidence as proof of the defendant’s bad character. See State’s brief, pp. 25-26. We disagree.
Assuming, without deciding, that the evidence regarding Billups’s involvement in the Avanti East killings was, as the State contends, relevant to show plan, identity, motive, and intent, the jury, pursuant to the trial court’s broad instruction, nonetheless remained free to consider that evidence for numerous other purposes (including opportunity, preparation, knowledge, or absence of mistake or accident) that were indisputably not at issue in this case. See McAdory v. State, 895 So.2d 1029, 1036 (Ala.Crim.App.2004) (plurality opinion) (concluding that the jury could not have properly considered *1086 the defendant’s prior convictions to show knowledge and intent because neither was at issue). Presenting the jury with such a far-reaching “limiting” instruction carries with it the same problems as providing the jury with no specific purpose for considering the other crimes, wrongs, or acts evidence.
“[A]n instruction should advise the jury on the purposes for which prior acts are admitted, meaning uses that are plausible in the case at hand, and should not include a laundry list of every conceivable use.” 1 Christopher B. Mueller and Laird C. Kirkpatrick, Federal Evidence § 4:30 at 789 (3d ed.2007) (emphasis added). In this case, however, the jury was allowed to consider the evidence regarding Billups’s involvement in the Avanti East killings for several implausible purposes, including, among others, opportunity and absence of mistake or accident. For example, Billups made no argument at trial that Lockett’s killing was the result of an accident or that he lacked the opportunity to kill Lockett; rather, Billups’s defense was that another person, Charles Cooper, was responsible for Lockett’s murder.
By simply reciting the complete “laundry list” of permissible theories under Rule 404(b), the trial court’s instruction in this case gave the jury inadequate guidance. See Ex parte Belisle, 11 So.3d 323, 333 (Ala.2008) (“[A]n appellate court ‘presume[s] that the jury follows the trial court’s instructions unless there is evidence to the contrary.’ ” (quoting Cochran v. Ward, 935 So.2d 1169, 1176 (Ala.2006))). The trial court’s instruction also failed to limit the State to the purposes — as nonspecific as they were — that it advanced in support of admission of the evidence regarding Billups’s involvement in the Avanti East killings. Thus, we conclude that the trial court erred by failing to limit the jury’s consideration of that evidence to only those purposes for which the evidence was purportedly offered by the State (plan, identity, motive, and intent). See Huddleston, supra; cf. United States v. Tse, 375 F.3d 148, 158 (1st Cir.2004) (finding that the district court “adequately limited the jury’s consideration of [certain Rule 404(b) ] evidence” when the court instructed the jury that it could not use that evidence “to make a propensity inference” and that the jury could use that evidence to determine only the defendant’s “knowledge and intent”).
With regard to the erroneous jury instruction, we agree with Judge Welch’s conclusions that “[t]he confusion of the jury and the probable prejudice to Billups is obvious” and that “the error affected Billups’s substantial rights and ... seriously affected the fairness and integrity of the proceeding against him.” Billups, 86 So.3d at 1079 (Welch, J., dissenting). Accordingly, we conclude that, under the particular circumstances of this case, the trial court’s failure to properly instruct the jury regarding the purposes for which it could consider the evidence of Billups’s involvement in the Avanti East killings constituted plain error.

Conclusion

For the above-stated reasons, we reverse the judgment of the Court of Criminal Appeals, and we remand the case to that court with directions to remand it to the trial court for a new trial. We preter-mit as unnecessary any discussion of the other grounds on which we granted certio-rari review.
REVERSED AND REMANDED WITH DIRECTIONS.
COBB, C.J., and LYONS, WOODALL, STUART, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.
SMITH, J., concurs specially.

. The State did not inform the trial court of any specific Rule 404(b), Ala. R. Evid., exceptions under which it sought to admit the evidence regarding Billups's involvement in the Avanti East killings; it appears that the closest the State came to doing so occurred during the following exchange with the trial court:
"THE COURT: Under [Rule] 404(b), what are the particular things that the State is looking at?
"[THE STATE]: Well, we’re looking at the same cause of death: multiple gunshot wounds to the head. We're looking at the similar motive: to steal drugs. We’re looking at the same gun used in both crimes. I
*1085 mean, it's multiple things, multiple similarities.”

.In its brief to this Court, the State contends that, "[although only one instruction would have sufficed, in an abundance of caution, the trial court instructed the jury repeatedly that evidence of the [Avanti East killings] was only being offered for the limited [Rule] 404(b), non-character purposes to prove 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.’ (R. 385 vol. 6, 778, 782, 791 vol. 8, 244-47, 268 vol. 10).” State's brief, pp. 25-26 (emphasis added; footnotes omitted). However, our review of the State’s contention reveals that in only two of those citations to the record was the trial court instructing the jury regarding its consideration of the evidence of Billups's involvement in the Avanti East killings; specifically, as noted, the trial court instructed the jury regarding that evidence during the testimony of Charles Cooper and during its final jury charge. The relevant portions of those instructions are quoted above.

. The State also contends that the evidence regarding Billups’s involvement in the Avanti East killings was relevant to show Billups’s intent to murder Lockett. State's brief, pp. 12, 14.

. Rule 404(b), Ala. R. Evid., is identical to Rule 404(b), Fed.R.Evid. ”[C]ases interpreting the Federal Rules of Evidence will constitute authority for construction of the Alabama Rules of Evidence.” Advisory Committee’s Notes, Rule 102, Ala. R. Evid.